

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-1995

# Jumara v State Farm

Precedential or Non-Precedential:

Docket 94-1447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Jumara v State Farm" (1995). *1995 Decisions.* Paper 149.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/149

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 94-1447


GEORGE JUMARA and EVANGELINA JUMARA, H/W

Appellants

v.

STATE FARM INSURANCE COMPANY

Appellee



On Appeal From the United States Court of Appeals
For the Eastern District of Pennsylvania
(D.C. Civ. No. 94-cv-00366)



Argued:  September 22, 1994

Before:  BECKER, COWEN and GARTH, Circuit Judges.

(Filed  June 2, 1995)


LEE BELFER, ESQUIRE (ARGUED)
RONALD A. BLUMFIELD, P.C.
RONALD A. BLUMFIELD, ESQUIRE
1636 Pine Street
Philadelphia, PA   19103

Attorneys for Appellants


DANIEL A. PERRY, ESQUIRE (ARGUED)
THOMAS P. COMERFORD, ESQUIRE
FOLEY, COGNETTI & COMERFORD
507 Linden Street
700 Scranton Electric Bldg.
Scranton, PA   18503

OPINION OF THE COURT

Becker, Circuit Judge.

This is an underinsured motorist (UM) case governed by Pennsylvania law. The appeal arises out of an action filed in the United States District Court for the Eastern District of Pennsylvania by plaintiffs George and Evangelina Jumara seeking to appoint arbitrators and to compel arbitration by their own carrier, defendant State Farm Insurance Company. Ultimately, it presents the question whether the Jumaras' (two) insurance contracts with State Farm, which incorporate the Pennsylvania Uniform Arbitration Act (UAA), contemplate arbitration-related proceedings in the Court of Common Pleas of Luzerne County (PA) or in the United States District Court for the Middle District of Pennsylvania, or in either court. The district court denied the Jumaras' motion to compel arbitration (and thereby effectively dismissed the action), reasoning that the insurance contracts, in light of the Pennsylvania law that they incorporate, contained a forum selection clause that relegates the plaintiffs to suit in the Court of Common Pleas of Luzerne County. We disagree, and will vacate the order denying plaintiff's motion.

Although the district court in effect disposed of the case under 28 U.S.C. § 1406 (for improper venue), we conclude that, because venue was actually proper in the Eastern District

of Pennsylvania, the case could not be dismissed pursuant to that provision.  The district court should instead have invoked 28 U.S.C. § 1404(a), which involves a multi-factor balancing test in which a contractual forum selection clause carries substantial although not dispositive weight.  However, because the other factors cannot even in combination overcome the forum selection clause, we will not remand the case, but rather will direct the district court to transfer the case to the United States District Court for the Middle District of Pennsylvania, a "court of record" in Luzerne County.[1]

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiffs are residents of Luzerne County.  While operating his motorcycle on May 22, 1992, George Jumara sustained serious injuries as a result of a collision with an automobile driven by Mary Reynolds.  Jumara underwent emergency surgery for numerous lacerations and fractures.  On June 9, 1992, the Jumaras filed a tort action against Reynolds, which they eventually settled on October 20, 1994 for the limits of Reynolds' automobile liability insurance policy, with the permission of

[1].  Prior to argument, we requested supplementary briefs on the question of whether this case was justiciable, i.e., whether there was a case or controversy within the meaning of Article III of the Constitution, and whether the dispute was ripe for decision.  This question arose because the Jumaras sought to compel the appointment of an arbitrator before the amounts of the underlying claims for underinsured motorists benefits were determined.  (The Jumaras had not yet settled their claim against Reynolds when they filed this action.)  After argument, any such question was resolved by the Jumaras' settlement with Reynolds for the limits of her liability policy.

State Farm.  At the time of the accident, the Jumaras' two cars were covered by automobile insurance policies issued by State Farm.  Each policy included underinsured motorist coverage of $100,000/$300,000, and each provided for arbitration in the event of disputes.  Reynolds was covered by a $100,000 liability policy.

On January 21, 1994, the Jumaras claimed underinsured motorist benefits in the amount of $200,000 under their policies by filing a complaint in the district court for the Eastern District of Pennsylvania (¶ 9 of Petition).  The complaint designated Steven C. Forman as the Jumaras' arbitrator, and sought the appointment of neutral and defense arbitrators and an order compelling underinsured motorist arbitration.[2]  The Jumaras served this complaint on State Farm on February 8, 1994.

In response, State Farm designated Joseph Van Jura as its arbitrator, but, based on the arbitration provisions contained in the insurance contracts, challenged venue in the Eastern District. On April 4, 1994, the district court held that proper venue lay with the Court of Common Pleas in Luzerne County and therefore denied the Jumaras' motion.  The Jumaras have appealed.  As of the time of oral argument before us, the two parties' arbitrators had been unable to agree on a neutral third arbitrator.

---

[2].  The dissent inadvertently represents that the Jumaras sought only the appointment of arbitrators in their petition.

By directing the Jumaras to the Pennsylvania state court, the district court's order in effect terminated the federal litigation of the Jumaras underinsured motorist claim. The order denying the Jumaras' motion was premised on the district court's view that Pennsylvania insurance law limited the Jumaras to proceeding in the Courts of Common Pleas. The court suggested no circumstances under which it would reconsider granting the Jumaras' motion, and hence the district court's order is final and appealable. 28 U.S.C.A. § 1291 (1994).

## II. SUBJECT MATTER JURISDICTION

Jurisdiction in the district court was premised upon diversity of citizenship, 28 U.S.C.A. § 1332 (1994). The Jumaras are citizens of Pennsylvania, and State Farm is a citizen of Illinois, which is the state of its incorporation and the location of its principal place of business. Thus the Jumaras established the complete diversity required by § 1332(a).

The diversity statute further requires, of course, that the amount in controversy be in excess of $50,000. 28 U.S.C.A. § 1332(a) (1994). While the Jumaras allege that State Farm is obligated to pay compensation in excess of that amount (up to $200,000 or the sum of the underinsured motorist benefits of each of the Jumara's policies), they did not demand any money damages in the district court; rather they sought only arbitration. Because of the nature of the policy, the amount of the Jumaras' claim against State Farm depends on the insurance shortfall left by Reynolds' policy, itself a function of the extent of both Mr. Jumara's injuries and the recovery available under Reynolds'

policy.  Because the Jumaras did not allege the amount of the insurance shortfall, the question arises as to whether the Jumaras have satisfied the diversity statute's amount in controversy requirement.  Indeed, State Farm argued in the district court that the lack of amount in controversy deprived that court of subject matter jurisdiction, an argument rejected by the court.

The question, however, is far from novel.  We faced a similar situation in Manze v. State Farm Ins. Co., 817 F.2d 1062, 1068 (3d Cir. 1987).  In Manze, the plaintiff sought to compel arbitration with her insurance company and appointment of a neutral arbitrator, and the carrier removed the action to federal court.  Although the demand made by the insured on her insurer exceeded the jurisdictional minimum, and the policy provided coverage in excess of the minimum, the plaintiff objected to diversity jurisdiction, contending that the amount in controversy requirement was unmet because she had asked the state court only to compel arbitration, not to award the amount she demanded.

We rejected her argument, holding that the requirement was satisfied despite the fact that the action did not itself seek monetary relief, id. at 1068.  We expressly followed Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511 (2d Cir. 1957), which denied a motion to remand to state court a (removed) action to compel arbitration according to the terms of a collective bargaining agreement, quoting Davenport's discussion of the amount in controversy requirement:

> In considering the jurisdictional amount requirement the court should look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award.

Manze, 817 F.2d at 1068 (quoting Davenport, 241 F.2d at 514). Thus the amount in controversy in a petition to compel arbitration or appoint an arbitrator is determined by the underlying cause of action that would be arbitrated.

This is in accord with general precedent concerning the amount in controversy requirement. The allegations on the face of the complaint control the amount in controversy unless it appears "`to a legal certainty the claim is really for less than the jurisdictional amount . . . .'" Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, 81 S. Ct. 1570, 1573 (1961) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S. Ct. 586, 590 (1938)). Indeterminacy of the amount to be recovered is therefore not sufficient to defeat diversity jurisdiction, and so it is immaterial that the Jumaras might eventually recover less than $50,000 from State Farm. Given that the Jumaras allege quite serious injuries and an entitlement to as much as $200,000 in underinsured motorist benefits, we cannot say with legal certainty that the Jumaras will recover less than $50,000. Thus, the amount in controversy requirement is satisfied, the district court had subject matter jurisdiction. We therefore turn to the merits of this appeal.

III.  VENUE

As we have explained, the district court dismissed the Jumaras' complaint by denying their motion to appoint arbitrators and to compel arbitration on the grounds of faulty venue.[3]  We conclude that the district court should instead have considered whether to transfer the case to the United States District Court for the Middle District of Pennsylvania.  We further conclude that the court should have ordered the transfer to the Middle District.

A. <u>SHOULD THE DISTRICT COURT HAVE ACTED PURSUANT TO 28 U.S.C. § 1404 OR 28 U.S.C. § 1406?</u>

The salient factor here is the presence of the forum selection clause.  In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law.  Because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature," <u>Jones v. Weibrecht</u>, 901 F.2d 17, 19 (2d Cir. 1991), federal law

---

[3].  The dissent argues that neither the parties nor the court ever invoked 28 U.S.C. § 1391 (the general venue provision), 28 U.S.C. § 1404(a) or § 1406 in terms.  However, the district courts' order denying <u>all</u> of the relief sought in the action -- effectively dismissing the Jumara's suit -- relied on the premise that this action could only be brought in a court of Luzerne County.  Thus, notwithstanding its failure to frame its order in venue terms or to cite the relevant venue statutes, the district court effectively dismissed the case for faulty venue, an action addressed by § 1406.  We hold, however, that the court's initial premise, that venue was actually improper in the Eastern District of Pennsylvania, was erroneous, and that, if the district court thought the action should instead proceed in the Middle District, it would have to consider transferring the case pursuant to § 1404.

applies in diversity cases irrespective of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

In Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 108 S. Ct. 2239 (1988), the Supreme Court held that federal law governed the district court's decision whether to grant a motion to transfer a diversity case to the venue provided in the contractual forum selection clause. The Court noted that venue was proper in the district court under federal law (ignoring the forum selection clause). Id. at 28 n.8, 108 S. Ct. at 2243 n.8. The majority rejected the dissent's contention that the effect -- if any -- of a forum selection clause should be a matter purely of contractual interpretation governed by state law. Instead, the Court required the district court to apply a case-specific balancing pursuant to the standards laid out in 28 U.S.C. § 1404(a) to determine whether to give the clause effect by transferring the case to another district court embracing the contractually specified forum.

In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case. Thus, while either statute could theoretically provide a basis for the transfer of a case, only § 1406 can support a dismissal. Because the district court's order effectively terminated the litigation in federal

court and did not attempt to effect a transfer of the case, we will construe the order as a dismissal pursuant to § 1406.

This determination of whether § 1404(a) or § 1406 applies affects our standard of review. If we determine that the court correctly applied §1406, i.e., if the action could not be maintained in the Eastern District, our threshold review is limited to determining whether the court considered the possibility of transferring the case, and if it did, whether it properly exercised its discretion in ordering a dismissal instead of a transfer. See 1A PT.2 JAMES W. MOORE & BRETT A. RINGLE, FEDERAL PRACTICE ¶0.347, at 4446 (2d ed. 1995) [hereinafter MOORE'S]. If the court did consider transferring the case, then our review of the exercise of discretion would be deferential. In contrast, if we decide that the district court failed to consider the transfer and applied § 1406 instead of § 1404(a), the order dismissing the case would reflect an error of law, subject to plenary review. Cf. Kean v. Stone, 966 F.2d 119, 121 (3d Cir. 1992) (holding that the question whether a district court applied the correct legal standard in deciding a fee award should receive plenary review notwithstanding the fact that fee awards are ordinarily reviewed only for an abuse of discretion).

In order to decide which statute should have governed the district court's transfer order in this case, therefore, we must first decide whether venue was proper in either or both the Middle District or the Eastern District.

The federal venue statute provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

    \*    \*    \*

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391.

Clearly, venue would be proper in the Middle District of Pennsylvania where the plaintiff resides, the defendant transacts business, the contract was signed, and events triggering the dispute occurred. Venue is also proper, however, in the Eastern District of Pennsylvania, where the defendant transacts business and is therefore subject to personal jurisdiction. See 28 U.S.C. § 1391(c) (venue proper in judicial district in which corporation is doing business); see also Stewart Organization, Inc., 487 U.S. at 29 n.8, 108 S.Ct. at 2243

n.8 ("The parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a) because respondent apparently does business [there].") Since venue is proper in the Eastern District where the action commenced, the district court's effective dismissal of the action constituted an error of law. The District Court should instead have applied the appropriate balancing test under 28 U.S.C. §1404(a) to determine whether the case should proceed in the Eastern District or be transferred to the Middle District.[4]

## B. APPLICATION OF SECTION 1404(a)

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of establishing the need for transfer still rests with the movant, 1A PT.2 MOORE'S ¶ 0.345[5]; Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970), cert. denied, 401 U.S. 910, 91 S. Ct. 871 (1971). And, "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." 1A PT.2 MOORE'S ¶ 0.345[5] at 4360; 15 CHARLES A. WRIGHT ET AL. FEDERAL PRACTICE AND

---

[4]. The dissent argues that, in holding that the district court should have considered transfer under § 1404(a), we "evolve analyses and theories that neither the district court nor counsel considered . . . ." We disagree. In holding that the action could only proceed in a court of Luzerne County, an argument raised by State Farm, the district court clearly did consider the sort of venue analysis upon which we base our holding.

PROCEDURE: JURISDICTION AND RELATED MATTERS § 3848, at 385 (2d ed. 1986) [hereinafter WRIGHT ET AL.]; Schexnider v. McDermott Int'l, Inc., 817 F.2d 1159 (5th Cir. 1987); Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, Inc., 136 F. Supp. 508 (D. Del. 1955).

In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in §1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 WRIGHT ET AL. § 3847. While there is no definitive formula or list of the factors to consider, see 1A PT.2 MOORE'S ¶ 0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

The private interests have included: plaintiff's forum preference as manifested in the original choice, 1A PT.2 MOORE'S ¶ 0.345[5], at 4363; the defendant's preference, 15 WRIGHT ET AL. § 3848, at 385; whether the claim arose elsewhere, 15 WRIGHT ET AL. § 3848; the convenience of the parties as indicated by their relative physical and financial condition, id. § 3849, at 408; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, id. § 3851, at 420-22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), id. § 3853.

The public interests have included: the enforceability of the judgment, 1A PT.2 MOORE'S ¶ 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, id.; the relative administrative difficulty in the two fora resulting from court congestion, id., at 4373; 15 WRIGHT ET AL. § 3854; the local interest in deciding local controversies at home, 1A PT.2 MOORE'S ¶ 0.345[5] at 4374; the public policies of the fora, see 15 WRIGHT ET AL. § 3854; and the familiarity of the trial judge with the applicable state law in diversity cases. 15 WRIGHT ET AL. § 3854.

Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. Hence, within the framework of § 1404, Congress "encompasse[d] consideration of the parties' private expression of their venue preferences." Stewart, 487 U.S. at 29-30, 108 S. Ct. at 2244. Although the parties' agreement as to the most proper forum should not receive dispositive weight, id. at 31, 108 S.Ct. at 2245; Red Bull Assocs. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir. 1988), it is entitled to substantial consideration. See Weiss v. Columbia Pictures Television, Inc., 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) (quoting Stewart, 487 U.S. at 29, 108 S. Ct. at 2243). Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (remand of Stewart); Weiss, 801 F. Supp. at 1278. Where the forum selection

clause is valid, which requires that there have been no "fraud, influence, or overweening bargaining power," see The Bremen v. Zapata Offshore Co., 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914-15 (1972), the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum.

Such an extensive enumeration of factors to be balanced makes "a written opinion setting forth the reasons for transfer . . . highly desirable, [although] not essential if the record shows that the proper factors were considered." 1A PT.2 MOORE'S, ¶ 0.345[5], at 4381; Westinghouse Elec. Corp. v. Weigel, 426 F.2d 1356 (9th Cir 1970). In light of this principle, the district court's rather opaque order is problematic. Even had the court believed that it was applying § 1404(a), there is no indication that it properly considered these factors, and the written order denying the motion to appoint the arbitrators does not satisfy the mandate that the proper factors be considered. Ordinarily, we would remand for further consideration; here, however, the factors unequivocally support a transfer to the venue specified in the contractual forum selection clause, so that a remand is unnecessary.

We note in this regard that some courts have refused to apply this multi-factored balancing test where the transfer requested involves a forum which is a relatively short distance from the original forum. Instead, such courts have simply refused to consider transfer, arguing that the statute was not intended for these types of transfers, and some commentators have agreed. See 15 WRIGHT ET AL. § 3854, at 470 (citing cases).

But refusing to entertain the transfer would leave this case in the Eastern District of Pennsylvania, an odd result given the location of the parties, the situs of the original contract, and the ultimate location of the arbitration proceedings themselves pursuant to the contractual forum selection clause, as we explain in the balance of this opinion. Although we recognize the validity of these other courts' concerns, we believe the factors weigh so heavily in favor of transferring this action to the Middle District that we will apply § 1404(a) notwithstanding the proximity of the alternative fora.

## C. THE CONTRACTUAL VENUE PROVISIONS

In concluding that this action to compel arbitration could only be brought in the Court of Common Pleas of Luzerne County, the district court relied on its interpretation of the insurance contract. As we have explained, however, the decision whether venue was appropriate in the original forum or whether the action should be transferred involves a multi-factored test incorporating the forum selection clause as one facet of the convenience-of-the-parties consideration. Hence, while the district court should have interpreted and considered the contractual choice of forum, it erred to the extent that it accorded the clause dispositive effect.

Beyond relegating the forum selection clause to being a non-dispositive factor, albeit one entitled to "substantial consideration," we also review the district court's construction of the provision. A district court's construction of a contract

is subject to plenary review, as it concerns the legal effect of an agreement and is therefore a question of law. <u>Vanguard Telecommunications, Inc. v. Southern New England Tel. Co.</u>, 900 F.2d 645, 650 (3d Cir. 1990). We conclude that, although the parties did contemplate that this action transpire within Luzerne County, they did not limit the fora to the state courts but rather intended to permit the action in any court, including the federal court, of the county.

The insurance contracts between the Jumaras and State Farm provide that the matters of whether the Jumaras are entitled to collect damages from the owner of an underinsured motor vehicle and if so, in what amount, are questions to be decided by agreement of the parties. The contracts further provide:

> If there is no agreement, these questions shall be decided by arbitration at the request of the **insured** or us. The Pennsylvania Uniform Arbitration Act, as amended from time to time, shall apply.
>
> Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on a third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.
>
> *                    *        *
>
> The arbitration shall take place in the county in which the **insured** resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

App. at 144a.

Plaintiffs correctly note that the requirement that arbitration occur in the county of their residence controls only the location of the arbitration proceeding. By its terms, this provision says nothing about where a petition to appoint arbitrators or to compel arbitration may be brought. Accord Shapiro v. Keystone Ins. Co., 558 A.2d 891, 894 (Pa. Super. 1989). But this conclusion does not end our inquiry.[5]

By its terms, the agreement directs that where, as here, the two parties' arbitrators are unable to agree on a neutral third arbitrator, "either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one." Although the district court concluded that this could only occur in the Court of Common Pleas of Luzerne County, we hold that the phrase "a court of record in the county" includes the United States District Court for the Middle District of Pennsylvania, the federal judicial district that encompasses Luzerne County. Our construction follows from the fact that the federal courts are "courts" within the meaning of the Pennsylvania UAA, which is incorporated in the insurance contracts. As we noted in Allstate Ins. Co. v. Gammon, 838 F.2d 73 (3d Cir. 1988), the UAA was amended to change the definition of "courts" from merely "the common pleas courts of the county

---

[5]. Although neither party was able at oral argument to explain how arbitration could actually be "pending" when arbitrators have not been selected, we agree with the parties that the only sensible construction of the contract language ("the county in which the arbitration is pending") is to refer to the county where the arbitration proceeding will be pending or held, i.e., Luzerne County, Pennsylvania.

having jurisdiction of the parties or the subject matter" to "any court of competent jurisdiction of [the] Commonwealth." Id. at 76-77 (quoting former § 178 of the Pa. UAA and 42 Pa. Con. Stat. Ann. § 7318 (1952)). This venue provision thus permits applications for appointment of arbitrators to be made to the United States District Court for the Middle District of Pennsylvania.

This conclusion does not by itself determine whether, pursuant to this contractual provision, venue might not be proper in the Eastern District of Pennsylvania, for the quoted provision is permissive ("either party may request"), see supra at 17, and thus leaves unresolved the question of the parties' intent, i.e., whether they intended to make an exclusive choice of courts of Luzerne County as the only fora for these actions. It is nevertheless unnecessary to remand this case to the district court for the purpose of determining the parties' intent with respect to the forum selection provision, inasmuch as other provisions of the contract resolve any ambiguity.

The insurance contracts specifically direct that "the Pennsylvania Uniform Arbitration Act . . . shall apply." Section 7304 of the UAA provides that "[o]n application to a court to compel arbitration . . ., the court shall order the parties to proceed with arbitration." 42 Pa. Con. Stat. Ann. § 7304 (1982). We believe that section § 7319, which governs venue considerations, is dispositive. It commands that ("[e]xcept where otherwise prescribed by general rules"),

> [a]n initial application to a court under this subchapter <u>shall be made to the court of the county in which the agreement prescribes that the arbitration hearing shall be held</u> or, if the hearing has been held, in the county in which the hearing was held.

42 Pa. Con. Stat. Ann. § 7319(1) (1982) (emphasis added).

Thus, by incorporating the UAA, the insurance contracts between the Jumaras and State Farm dictate that actions to compel arbitration be made to "a court of record" of Luzerne County, see supra at 17. As we explained above, this includes the appropriate United States District Court. While it thus includes the District Court for the Middle District of Pennsylvania, which embraces Luzerne County, it does not include the United States District Court for the <u>Eastern</u> District, which is not a court "of [Luzerne] county." The district court was therefore correct in concluding that, by their express terms, the insurance contracts under which the Jumaras were proceeding did not contemplate venue in the Eastern District.

### D. OTHER § 1404 CONSIDERATIONS

As we have already explained, courts balancing the convenience of the parties, the convenience of the witnesses, and the interests of justice should place considerable weight on the parties' original choice of forum, as expressed in a contractual forum selection clause. The insurance contract at issue here contained a forum selection clause in effect specifying the Middle District of Pennsylvania as the site for any arbitration under the contract. There is no claim of unequal bargaining that might invalidate the clause. The plaintiffs in this case clearly

cannot make the showing of convenience necessary to overcome the presumption established by the forum selection clause, and neither the witness convenience nor the interest-of-justice factors counsel in favor of maintaining the action in the Eastern District of Pennsylvania. Indeed, some of these other considerations actually militate in favor of the Middle District of Pennsylvania.

Everything related to this action occurred in Luzerne county, which lies in the Middle District: plaintiff resides there, the contract was signed there, the underlying accident occurred there, and the requested arbitration will eventually occur there. Unlike Red Bull Associates, 862 F.2d at 963, where the federal forum had a strong policy interest in enforcing the civil rights laws thus justifying setting aside a forum selection clause, the Eastern District has no corresponding public policy interest in appointing the arbitrator in this case. Given the close proximity of the two fora, the § 1404(a) factors other than the forum selection clause factors -- the relative physical and financial condition of the parties, the location of the witnesses, the situs of the documentary evidence, and the relative expense or expeditiousness of the trial -- do not render one forum significantly more convenient than the other, and they certainly do not support overriding the parties' original venue preference as expressed in the forum selection clause.[6]

---

[6]. The financial condition of the Jumaras might make the Middle District more convenient to them, but since their present counsel is from Philadelphia that consideration would appear muted.

The fact that the two fora are adjacent districts of the same state also obscures the interest-of-justice analysis, which gives little reason to override the forum selection clause. None of the following factors exist: (1) a likelihood of an enforcement problem; (2) a distinct public interest in resolving the claims in a Luzerne County court as opposed to in Philadelphia; (3) a different policy preference in the two locales; (4) a disparity in the qualifications of the federal judges sitting in the two districts to pass on the same Pennsylvania law; or (5) an appreciable difference in docket congestion between the two districts. After reviewing the various facets of the convenience of the parties and witnesses as well as the interests of justice, we do not believe that these factors, most of which cannot distinguish the fora on convenience grounds, could overcome the "substantial consideration" due the forum selection clause.

IV. CONCLUSION

The Supreme Court explained in Stewart that section 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer. Stewart, 487 U.S. at 30-31, 108 S. Ct. at 2244. Because it appears that the district court erroneously believed that this action could only be brought in state court, it did not construe State Farm's objection to the appointment as a § 1404(a) motion. As a result, the court did not make the determinations required by that provision. However, because the

balance in this case so clearly mandates a transfer to the Middle District of Pennsylvania, a remand to the district court for the § 1404 balancing is unnecessary.  We will therefore vacate the district court's order denying the motion to appoint arbitrators and compel arbitration, and direct the district court to **order the transfer**.

_____

George Jumara; et al. v. State Farm Insurance Company,
No. 94-1447

GARTH, Circuit Judge, dissenting:

After the Jumaras filed their petition and their motion to appoint arbitrators, State Farm filed its answer in opposition. The panel majority has now concluded that the district court erred by failing to transfer the Jumaras' proceeding to the Middle District of Pennsylvania. It does so by using some judicial alchemy to transform State Farm's answer to the Jumaras' motion to appoint arbitrators into a motion to transfer venue under the federal venue statutes, 28 U.S.C. §§ 1391, 1404 and 1406.

It so holds even while it agrees that the district court judge was eminently correct when he denied the Jumaras' petition to appoint arbitrators. Despite this admission, the majority directs that the district court's order denying appointment of arbitrators must be vacated. It also requires that the district court transfer the Jumaras' petition to the Middle District of Pennsylvania -- a transfer sought by neither of the parties and certainly not desired by the Jumaras.

Because I believe that we should not vacate a district court's order when the substantive order that it entered was unquestionably correct in light of the issues raised by the parties, and because no party in this case ever sought a § 1404(a) transfer of venue, either on appeal before us, or even

**more importantly, before the district court, I am compelled to dissent.**[7]

## I.

It should be remembered that the Jumaras' counsel only petitioned the district court for the appointment of arbitrators and to compel arbitration. He did so by invoking those portions of the Jumaras' insurance contract and the sections of the Pennsylvania Uniform Arbitration Act referred to by the majority.

---

[7]. A question arose early on in this case whether the district court was ever presented with a justiciable case or controversy within the meaning of Article III. Under the ripeness doctrine, federal courts "will not decide a case where the claim involves contingent future events that may not occur as anticipated, or indeed may not occur at all." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985).

The Jumaras seek ultimately to recover underinsurance benefits from State Farm. By definition, and by the terms of the insurance contract between the parties, underinsurance coverage becomes available only after (1) it is determined that the individual responsible for the harm complained of is liable and unable to fully compensate the insured, or (2) the limits of the tortfeasor's coverage has been offered.

Unless and until these conditions have been satisfied, any judicial pronouncement on the matter is necessarily speculative and vain. If for instance it is later found that the alleged tortfeasor's liability is within the limits of her own liability coverage (or indeed that she is not liable at all), then the exertions of counsel and arbitrators, with their associated costs to the parties, as well as the efforts of the courts, will have been for nought.

We have been informed by counsel for the Jumaras that on October 20, 1994, the Jumaras' action against Reynolds, the alleged tortfeasor, was settled for the limits of Reynolds' vehicle policy and that State Farm had waived its subrogation rights. This, of course, triggered the Jumaras' rights under the provisions of the Jumaras' own policy.

It was this motion that the district court denied, and properly so, on the basis of the factual and legal contentions before it.

There can be no question that the majority is correct in pointing out that under 28 U.S.C. § 1404(a), the district court when faced with a motion challenging venue, is limited to either retaining jurisdiction over the proceeding, or transferring jurisdiction to the district where it should have been brought. In this case, the most appropriate venue lay in any court of competent jurisdiction of Luzerne County, which would include the United States District Court for the Middle District of Pennsylvania. See Allstate Ins. Co. v. Gammon, 838 F.2d 73, 77 (3d Cir. 1988) (holding that district courts are included within the meaning of "any court of competent jurisdiction of [the] Commonwealth").

I have no problem with the majority's analysis of 28 U.S.C. § 1404(a) and § 1406. Nor do I have a problem with the majority's ultimate determination that the factors relevant to retaining jurisdiction under § 1404(a) or transferring a proceeding to another locality under § 1404(a) favor giving predominant weight to the forum selection clause in the parties' contract. Thus, I do not dispute the majority's view that the Middle District was one venue open to the parties, as was the Court of Common Pleas of Luzerne County.

Nor do I quarrel with the majority's analysis of the federal venue provisions. In this case, of course, the forum

selection clause unquestionably required any application for arbitrators to be made in Luzerne County and not in the Eastern District of Pennsylvania.  The majority so holds, and if it were not for the fact that §§ 1404 and 1406 <u>were never raised</u> nor presented as an issue in the Jumaras' proceedings, I would have joined the majority opinion.  However, at no time, and in no court, did either the Jumaras or State Farm seek a venue change under § 1404(a) or even mention § 1404(a) in their respective arguments or briefs.

I emphasize first and foremost that neither party -- neither the Jumaras nor State Farm -- ever invoked, referred to, cited or argued that 28 U.S.C. § 1391 (venue generally), or § 1404 (change of venue), or § 1406 (cure or waiver of defects [in venue]) should be considered by any court.[8]  The motion made by the Jumaras was purely and simply a substantive motion to "Appoint Neutral and Defense Arbitrators and to Compel Underinsured Motorist Arbitration."  It was that motion, and

---

[8].  I note that venue is a privilege provided to the defendant, that this privilege may be waived, and that it is waived if it is not expressly asserted. See generally, A. WRIGHT ET AL. FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3829, AT 309 – 318 (2D ED. 1986).  Moreover, Fed.R.Civ.P. 12(b)(3) requires that a defense of improper venue be raised in the responsive pleadings or by motion, or it will be deemed waived.

In light of the record before us, which is totally devoid of any mention of § 1406, § 1404, or § 1391 (the general federal venue statute) in any pleading or motion, it is surprising to me that the majority has ignored all waiver jurisprudence and has gratuitously embarked on a venue analysis which the parties and the district court have evidently abjured.

only that motion, that the district court considered and denied. It did so properly and correctly, and the majority of the court does not argue otherwise.

The record does not reveal that either party ever raised the issue of § 1404 venue before the district court. At no time did the district court ever advert to the subject of § 1404 venue. The district court's opinion makes no reference to § 1404 venue. The briefs before us did not raise any issue of § 1404 venue. The argument before us never touched on any of the federal venue statutes. Indeed, the first time that § 1404 or § 1406 surfaced was when the majority, relying upon those statutes, took the occasion to vacate the district court's order and to direct the district court to order a transfer of the Jumaras' proceedings to the Middle District of Pennsylvania pursuant to § 1404(a).

Had the issue of venue under § 1404(a) been raised, I could not fault the majority for holding that § 1404 required a transfer. However, where the issue of § 1404(a) venue was never raised and where the district court judge was presented only with the substantive issue of appointing an arbitrator, I cannot find fault, and I suggest the majority should not find fault, with the district judge's disposition of the matter. In my opinion, counsel have an obligation to specifically inform the judge exactly what it is that they desire and they must then support that request for relief with appropriate authority. Here, the

district court was asked only to appoint arbitrators. It was never asked to consider a venue change under § 1404 or § 1406, and indeed, despite the majority's claim that the district court considered venue, it did not consider or analyze the federal venue provisions.  It was the issue of appointing arbitrators, and that issue only, that the district court decided.

It is true that the district court in its footnote to its order referred to Luzerne County as the proper place to seek relief.  But, the district court did not <u>order</u> transfer to Luzerne County because it was obviously never asked to do so. The Jumaras never asked for a transfer of venue.  Quite to the contrary, the Jumaras' counsel has persistently argued that the Jumaras do not desire venue in Luzerne County.  Why not?  Because arbitrators selected from Luzerne County might not be as liberal with an insurance company's dollars as the arbitrators appointed in the Eastern District of Pennsylvania.

For this reason, as candidly expressed by counsel, application was made by the Jumaras to the United States District Court for the Eastern District of Pennsylvania.  We were informed that an arbitrator appointed from within the geographical scope of the Eastern District was likely to award a higher amount of damages than an arbitrator appointed from Luzerne County.[9]

---

[9]. At oral argument counsel for the Jumaras explained the rather parochial practice of Philadelphia arbitrators in underinsurance cases.  They apparently determine what a case is "worth" and then make an underinsurance award of the amount by which the claimant's "damages" exceed the policy limits of the putative tortfeasor's insurance.  They do so seemingly in disregard of the

The record just does not reveal that State Farm asked the district court to exercise its § 1404(a) discretion to transfer the matter to Luzerne County. State Farm took the position that the Jumaras' petition should be denied outright -- as it was. How then can we direct the district court to order a transfer in conformity with relief that it was never asked to grant and which neither of the parties sought?

One would think that we would affirm a district court's order where the district court did not err in its substantive disposition and where the district court was asked to do nothing more than to decide the motion brought before it by the plaintiff.[10] Here, the Jumaras sought the appointment of

(..continued)
contractual conditions precedent referred to in note 1, <u>supra</u>. Counsel also represented that it is the practice of Scranton arbitrators, as contrasted with arbitrators appointed in the Eastern District, to refrain from making an award until the underlying claim has been resolved.

Together with both counsel, I share an inability to explain how an arbitral award of underinsurance coverage may properly be made prior to determining the extent (or even the existence) of the alleged tortfeasor's liability.

[10]. It is obvious to me, if not to the majority, that the district court contemplated that the Jumaras would bring a new action in Luzerne County after they were denied the appointment of arbitrators in the Eastern District. The majority states that, to implement this, "...it [the district court] would have to consider transferring the case pursuant to § 1404." Maj. Op. p. 8, n. 3. The difficulty with the district court considering such a transfer was that neither the district court nor the parties ever considered § 1404. The district court considered such a transfer, if at all, only under the Commonwealth's statutes, which could not in any event have been employed in a federal court's venue analysis, as the majority makes clear in its analysis of <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22 (1988).

arbitrators. The district court properly denied that motion. The district court was never asked about, or even became acquainted with, the venue considerations that the majority has today, by hindsight, now developed and analyzed. However, the majority, without discussing the <u>sua</u> <u>sponte</u> responsibilities of a district court to supply that which counsel has not supplied, asked for, or even referred to, nevertheless has now vacated the district court's order and has directed it to transfer the proceeding to Luzerne County.

I cannot condone reversing a district court judge when he has done no more than rule correctly on the issue as formulated by the parties. I do not think that an appellate court can or should convene months later and evolve analyses and theories that neither the district court nor counsel ever considered and then, for the first time, impose them upon the district court.

The majority in its footnotes 3 and 4 seeks to excuse its gratuitous discussion of federal venue under §§ 1404 and 1406 by noting that the district court in the footnote to its April 4, 1994 order, states that the Jumaras' proceeding should be conducted in Luzerne County. There is no question but that the district court was aware of a venue defect. But there is also no question that the venue issue, if addressed at all by the parties, was addressed under the terms of the State Farm contract and the Pennsylvania venue statutes, and not under the federal

venue statutes.  Thus, the majority is plainly disingenuous when it states, at page 12, footnote 4, that "...the district court clearly did consider the sort of venue analysis upon which we base our holding."  The district court at no time considered a venue analysis which drew on the federal venue statutes, §§ 1404, 1406 and 1391, the very statutes on which the majority bases its holding.

## II.

Our decision in this case was crystal clear.  We should have affirmed the very correct decision made by the district court judge.  We did not.  I therefore respectfully dissent.