Ronald L. HILLARD, Individually, Thomas J. McGrath, Jr., Individually, and Devices for Life, Inc., Plaintiffs,

v.

GUIDANT CORPORATION, Sulzer Intermedics, Inc. and Sulzer Medica USA, Inc., Defendants.

No. 3:98–CV–2077.

United States District Court, M.D. Pennsylvania.

Dec. 9, 1999.

---

Harvey Freedenberg, Donald Brower Kaufman, Matthew B. Royer, McNees, Wallace & Nurick, Harrisburg, PA, James A. Gale, Feldman Gale & Weber, Miami, FL, James A. Gale, Miami, FL, for Ronald L. Hillard and Devices for Life, Inc., plaintiffs.

Lori R. Bramley, Myers, Brier & Kelly, LLP, Scranton, PA, James A. Gale, Feldman Gale & Weber, Donna A. Walsh, Myers Brier & Kelly, LLP, Scranton, PA, Daniel Thomas Brier, Myers Brier & Kelly, LLP, Scraton, PA, for Thomas J. McGrath, Jr., plaintiff.

Dino Antonio Ross, Reed, Smith, Shaw and McClay, Harrisburg, PA, Edward L. Friedman, Houston, TX, for Guidant Corp., defendant.

Andrew Hailstone, Scranton, PA, Lawrence B. Schreve, Andrews & Kurth LLP, Houston, TX, for Sulzer Medica USA, Inc., defendant.

Sean N.R. Wells, Feldman Gale & Weber, Miami, FL, for St. Jude Medical SC Inc., Sherry L. Callicut, Larry Chazan, Jeff Clark, Mark Coggins, Steve Doll, Charlie Duvall, Gilbert Halpern, Steven Link, William R. MacDonald, Jim Manning, Paul Provost, Kriss Ross and Glenn Thompson, intervenors.

## MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is the plaintiffs' motion to transfer. The plaintiffs are Devices for Life, Inc. (hereinafter "DFL"), Ronald Hillard and Thomas McGrath, Jr., and the defendants are Guidant Corporation and Sulzer Intermedics, Inc.[1] The matter has been fully briefed and is thus ripe for disposition.

---

1. Since the filing of the instant motion, defendant Sulzer Medica, USA, Inc., has been dismissed from the instant action pursuant to a stipulation of the parties.

## Background

Plaintiffs brought the instant action against the defendants, for conduct which occurred during Guidant Corporation's acquisition of Sulzer Intermedics, Inc., for whom the plaintiffs had been sales representatives under a Sales Representative Agreement (hereinafter "Agreement") which plaintiffs executed on April 1, 1996. Pursuant to the terms of the Agreement, the plaintiffs were the exclusive sales representatives for a defined territory with responsibility for selling products manufactured and/or distributed by Intermedics, Inc.[2] Further, Intermedics, Inc. was to use its "best efforts" to supply products to enable plaintiffs to meet their sales quotas.

The plaintiffs allege that the Agreement is binding on Intermedics' successors and assigns including Defendant Guidant who purchased Intermedics on February 1, 1999. Guidant sought to have direct employees sell their products rather than independent contractors such as the plaintiffs. Plaintiffs and Intermedics' other independent contractors were faced with a choice, either become direct employees of Guidant or remain independent contractors with Intermedics. Plaintiffs allege that Guidant implemented a plan whereby independent contractors would be kept a generation or two behind in technology as an incentive for the independent contractors to become direct employees in derogation of the Agreement. Plaintiffs' complaint seeks declaratory judgment regarding each party's rights and obligations under the Agreement as well as damages for breach of contract and commercial disparagement.

This court granted a preliminary injunction for the plaintiffs ordering, *inter alia*, Defendant Guidant to use its "best efforts" to supply Plaintiff DFL with sufficient quantities of state-of-the-art devices manufactured and/or distributed by Guidant in accordance with the obligation set forth in Sections 3.1.1 and 3.2.1 of the Sales Representative Agreement. Our decision was appealed, and the defendants received a stay of injunction from the appellate court. Plaintiffs decided to sever certain relationships with the defendants and made an alternative arrangement with St. Jude Medical S.C., Inc. (hereinafter "St. Jude"), an industry competitor. Plaintiffs Hillard and McGrath agreed to work as independent sales representatives selling products competitive to those manufactured and distributed by the defendants. As a result of Hillard and McGrath and the remainder of its sales representatives departing, Plaintiff DFL discontinued selling on behalf of Intermedics. The Third Circuit Court of Appeals dismissed the appeal as moot, and we subsequently vacated the preliminary injunction.

It would appear that much of plaintiffs' complaint is now moot. However, the breach of contract and commercial disparagement claims remain. Defendants Intermedics has filed a counterclaim seeking reimbursement of the temporary financial assistance and damages for plaintiffs having allegedly disparaged Intermedics and injuring its reputation by publicly stating that Intermedics products are inferior or substandard in violation of the agreement.

Plaintiffs now move this court to transfer the action to the United States District Court for the Central District of California. The defendants oppose the transfer. After a careful review, and for the reasons that follow, we shall deny the motion.

## Discussion

■ The law provides that for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404. The Third Circuit has developed a paradigm for ana-

---

**2.** "Product" is defined in Section 1.9 of the Agreement as cardiac pulse generators (including pacemakers and implantable defibrillators) and related leads manufactured and/or distributed by Intermedicas during the term of the Agreement.

lyzing motions to transfer which includes an examination of public and private interests. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). The private interests to be examined include: "plaintiff's forum preference as manifested in the original choice; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum.)." *Id.* (citations omitted).

■■■■ "The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–880. The burden of establishing a need for transfer to another district rests with the moving party. *Id.* at 879.

In the instant case, plaintiffs contend that in light of a change in circumstances between the parties, it is appropriate to transfer the case to the United States District Court for the Middle District of California to allow the issues to proceed collectively with seven other closely related actions presently pending there. Such a transfer will be convenient for the parties and witnesses, will promote judicial economy, will not prejudice the defendants and will serve the interests of justice, according to the plaintiffs.

Defendant's first argument is that it is improper for this court to rule on the motion to transfer while an appeal is pending on the preliminary injunction decision. As the appeal has been disposed of, this argument is now moot, and we shall proceed to the substantive contentions.

Defendants allege that motions to transfer should not be liberally granted and that it is the plaintiffs' burden as the moving party to establish the need for the transfer. Defendants proceed to analyze the following factors and find them all weighing in their favor: plaintiffs forum preference; where the operative events occurred; convenience of the witnesses and availability of compulsory process to secure attendance of non-party witnesses; where the action can be tried more expeditiously; and public interest in adjudication of the controversy. We shall address all these factors *seriatim.*

Initially a determination must be made under section 1404(a) as to whether this case could originally been brought in the Central District of California. The law provides that venue is proper in a judicial district in which a corporation is doing business. 28 U.S.C. § 1391(c). It is apparently uncontested that the defendants conduct substantial business activities in California; hence venue is proper in California.

### 1. Plaintiffs' choice of forum

■■■ The weight to be afforded plaintiffs' choice of preference is the first factor we will consider. Plaintiffs contend that their choice of forum should be given much weight. We disagree. While it is true that courts have held that a plaintiff's choice of forum should weigh heavily in the plaintiff's favor, several factors compel us to not weigh it so heavily. First, in the usual case, the defendant moves for the transfer of the case and the plaintiff is then afforded deference in its initial choice of forum. In the instant action, it is the plaintiffs who are moving to transfer the case. More importantly, where none of the operative facts of the action occurred in the plaintiff's chosen forum, the choice is afforded less weight. *Fitzgerald v. Central Gulf S.S. Corp.*, 292 F.Supp. 847, 849 (E.D.Pa.1968); *Fortini v. Carolina*

*Freight Carriers Corp.*, 1986 WL 3056 at \* 3 (E.D.Pa.). A review of the complaint and counterclaims indicates that none of the operative facts in this action occurred in the Middle District of California; therefore, we will not afford great weight to the plaintiffs' choice of forum.

## 2. Convenience of witnesses/where cause of action arose

Convenience of the witnesses is the next issue we shall examine. Plaintiffs contend it will be very convenient for the witnesses, especially the defendants, to have the case tried in California, as the defendants are not located in the Middle District of Pennsylvania. Without more explanation the plaintiffs contend that "[t]he majority of non-party witnesses will be necessary in both this action and the California actions, and will likely be required to repeat the same testimony in each case." Pl. br. at 6. Moreover, the plaintiffs claim that six of the seven pending California actions have been consolidated, and that they would seek to join in the consolidated case promoting the convenience of all, especially the defendants who would then only have to defend cases in one district instead of two.

■ While the plaintiffs contend that the defendants will enjoy greater convenience if the case is transferred, the defendants focus on the convenience of the witnesses as is proper. The law on the transfer of cases distinguishes between party and non-party witnesses. The party witnesses are presumed to be willing to testify in either forum despite any inconvenience. The convenience of non-party witnesses is the main focus. *See e.g. Jumara, supra,* at 879 (The convenience of witnesses is examined only to the extent that witnesses may actually be unavailable for trial in one of the fora). Federal Rule of Civil Procedure No. 45(e)(1) provides that witnesses may be compelled to appear unless they reside more than one hundred miles from the court at which the trial is held.

A review of the complaint and counterclaim, reveals that the claims and counterclaims can be broken down into two different areas, commercial disparagement claims and contract claims. The witnesses for the disparagement claims all appear to located in the Middle District of Pennsylvania. Count V of Plaintiffs' Amended Complaint alleges that Guidant disparaged plaintiffs at "Wilkes–Barre General Hospital, Mercy Hospital of Wilkes–Barre and Hazleton General Hospital" Amended Complaint, ¶ 69. In his deposition, Plaintiff Hillard identified the non-party witnesses to whom Guidant's agent allegedly disparaged plaintiffs. All are located within this judicial district. See Hillard Dep. pp. 214–221, Ex. 1 to Declaration of Edward L. Friedman. As to the counterclaim with regard to disparagement, the witnesses necessary to establish this claim are also located in the Middle District of Pennsylvania. McGrath Dep. pp. 58–61, Ex. 2 to Declaration of Edward L. Friedman.

Accordingly, the convenience of the non-party witnesses with respect to the disparagement claims weighs heavily in favor of the case remaining in the Middle District of Pennsylvania as the witnesses reside beyond one hundred miles from the location of the California court. Plaintiffs apparently do not contest the conclusion that the disparagement claims witnesses are all located in the present judicial district.

■ The second general claim in this action involves various contract issues. Plaintiffs allege that Guidant's failure to provide them with state-of-the-art product was a breach of contract and would cause the destruction of their customer goodwill and business. Defendants contend that plaintiffs will need local non-party witnesses to establish these claims. As evidence of this, defendants point out that at the preliminary hearing the plaintiffs called Dr. Louis Blaum, a local physician, to establish their claim. Defendants will seek at trial to refute the plaintiffs' claims

with local witnesses. Decl. Edward L. Friedman, ¶¶ 113–17. The plaintiffs assert that "The majority of non-party witnesses will be necessary in both this action and the California actions, and will likely be required to repeat the same testimony in each case." Pl. br. at 6. Nothing is submitted to support this contention. Again, in their reply to the defendants' opposition brief, the plaintiffs allege, "the *majority* of non-party witnesses—relevant to the contract claims—will be necessary in both this action and the California actions, and will likely be required to repeat the same testimony in each case." Pl.Br. in Reply to Def. Guidant at 5. The plaintiffs again submit nothing to explain or support their assertion. Plaintiffs' failure to substantiate their claims makes it impossible for us to find that they have met their burden of proof in establishing that transfer is necessary. The party seeking the transfer must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover. *Austin v. Johns–Manville Corp.*, 524 F.Supp. 1166, 1169 (E.D.Pa.1981); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3851. A contention that a particular forum is inconvenient to potential witnesses must be supported by more than mere allegations. The moving party must specify inconvenience that is sufficiently prejudicial to justify dismissal. *Mowrey v. Johnson & Johnson*, 524 F.Supp. 771, 775 (W.D.Pa.1981).

█ Although it is difficult to tell from the plaintiffs' bald allegations which witnesses they are referring to, we assume they must be expert witnesses. We find that the expert witnesses are closely alined to the parties and will likely travel wherever the plaintiffs choose. Therefore, the convenience of experts will be given little weight. See e.g. *Forester v. Elk Towing Co.*, 242 F.Supp. 549, 550 (W.D.Pa.1965) (Expert witnesses inconvenience is insufficient to justify transfer of a case).

### 3. The district in which the action can be tried more expeditiously

A fourth factor for us to review is the relative congestion present in the districts. According to the 1998 Federal Court Management Statistics, the Middle District of Pennsylvania is less congested than the Central District of California. As of 1998 the California court had 407 pending cases per judge, whereas the Middle District of Pennsylvania had 317. Further, the time from filing to trial was shorter in the Middle District of Pennsylvania, eighteen months compared to twenty months. See Decl. of Edward L. Friedman, Ex. 3.

Plaintiffs allege, however, that it will promote judicial economy to transfer the case to the Central District of California, because thirty-seven (37) similarly situated plaintiffs are present there and they raise "nearly identical" issues. We are not convinced that the California plaintiffs are so related as to merit transfer of the case. As set forth above, all the actions in the present case took place in Pennsylvania. The plaintiffs reside here, the witnesses are from the Middle District. The similarities between the Pennsylvania plaintiffs and the California plaintiffs are that they all formerly worked as independent contractors for the same business, Intermedics, and presently they all work for St. Jude. When viewed in a light favorable to the plaintiffs, it appears that the contract claims may be similar in the California actions and the present one.

Plaintiffs claim that transferring the action to California will lessen the expense on themselves, the defendants and the court. They also seek to avoid inconsistent rulings and the potential *res judicata* and collateral estoppel issues. Plaintiffs, however, have failed to provide us with a sufficient basis on which to find that these issues should weigh in their favor.

Plaintiffs further contend that the fact that related claims are being tried in California weighs in favor of transfer. Sufficient facts to establish that this case is related to the California actions have not

been provided by the plaintiffs. Plaintiffs have provided very little information on which we could rely to transfer the case to the California court. We do not know specifically what issues are being tried in those actions, where the plaintiffs in those actions are from, or at what stage those proceedings are.

### 4. Public Interest in Local Adjudication of the Controversy

■ Defendants contend that the plaintiff has alleged and this court noted the importance of this case to local citizens. The outcome of the case will affect the healthcare received by the citizens of the Middle District of Pennsylvania. We, therefore, find this factor to balance in favor of the defendants.

In conclusion, we find that the plaintiffs' have not met their burden of establishing the need for the transfer of this case to the Central District of California. A review of the case indicates that the weighing of all the factors, both public and private, favors a finding that the case should not be transferred. Accordingly, the motion to transfer will be denied. An appropriate order follows.

### ORDER

**AND NOW,** to wit, this 9th day of December, 1999, the plaintiffs' motion to transfer [92–1] is hereby **DENIED.**