**In re CENTENNIAL COAL, INC. Centennial Resources, Inc., CR Mining Company and B–Four, Inc., Reorganized Debtors.**

**Rebecca Son, as Liquidating Agent of the Estates of the Above–Captioned Reorganized Debtors, Plaintiff,**

**v.**

**Coal Equity, Inc., and Louisville Gas & Electric Company, Defendants.**

**Bankruptcy Nos. 98–2316(PJW) to 98–2319(PJW). Adversary No. 00–01655.**

United States Bankruptcy Court, D. Delaware.

July 29, 2002.

John D. Demmy, Stevens & Lee, P.C., Wilmington, DE, Penny R. Warren, Robert J. Brown, Mickey T. Webster, Wyatt, Tarrant & Combs, LLP, Lexington, KY, for Defendant Louisville Gas & Electric Company.

Christopher D. Loizides, Magdalen Braden, Christopher D. Loizides, P.C., Wilmington, DE, for Plaintiff.

## MEMORANDUM OPINION

PETER J. WALSH, Chief Judge.

Before the court in this adversary proceeding is the motion (Doc. # 56) of Louisville Gas & Electric Company ("LG & E" and collectively with Coal Equity, Inc. ("Coal Equity"), "Defendants") to transfer

venue to the United States District Court for the Western District of Kentucky (Louisville Division). I will grant the motion for the reasons discussed below.

## BACKGROUND

Centennial Coal, Inc., Centennial Resources, Inc. ("CRI"), CR Mining Company and B–Four Inc. (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on October 13, 1998 ("Petition Date"). On October 16, 2000, Debtors' Second Joint Amended Plan of Reorganization ("Plan") was confirmed. (*See* Order (Doc. # 715, Case No. 98–2316).) The Plan is a liquidating plan.

On October 3, 2000, this Court entered an Order (Doc. # 704, Case No. 98–2316) in Debtors' chapter 11 case assigning to the Official Committee of Unsecured Creditors (the "Committee") the right to pursue bankruptcy actions on behalf of Debtors' estates (collectively, the "Estate"). Pursuant to the terms of the Plan, Rebecca Son ("Plaintiff"), as Liquidating Agent of Debtors' Estate, has succeeded to that right. (Pl.'s Mem. (Doc. # 58) at 3.)

The instant adversary proceeding was commenced on October 12, 2000 by the Committee. (*Id.*) It arises out of a 1995 coal marketing and sales agreement ("Sales Agreement") executed by and between Coal Equity and CRI and/or their predecessors in interest, and a related agreement ("LG & E Agreement" and collectively with the Sales Agreement, "Agreements") executed by and between Coal Equity and LG & E. (LG & E Br. (Doc. # 57) at 2.) CRI is a Delaware corporation, with its principal executive offices located in Kentucky, which, prior to the Petition Date, was engaged in the mining, marketing and sale of bituminous coal in Western Kentucky. (Am. Compl.(Doc.# 34) ¶ 4.) [1] Coal Equity is an Ohio corporation, with its principal place of business in Ohio (Pl's.Mem.(Doc.# 58) at 3), engaged in the business of selling coal and acting principally as a middleman between buyers and sellers (Am. Compl.(Doc.# 34) ¶ 10). LG & E, a Kentucky corporation, is an electric utility which purchases and burns coal to generate electricity. (*Id.* at ¶ 12.)

Pursuant to the terms of the Sales Agreement, CRI agreed to supply and deliver coal sold by Coal Equity to LG & E pursuant to the terms of the LG & E Agreement. Pursuant to the LG & E Agreement, Coal Equity agreed to supply LG & E with certain specified quantities and qualities of coal. In April 1997, LG & E informed Coal Equity that it would be withholding payment on certain invoices for coal shipments for the months of March and April. As grounds therefor, LG & E asserted that Coal Equity was in default of the LG & E Agreement due to its failure to deliver certain specified qualities and/or quantities of coal. Thereafter, LG & E withheld payment from Coal Equity and obtained replacement coal at a higher cost from an alternative supplier. As a result, Coal Equity then withheld payment on certain invoices ("Unpaid Invoices") from CRI. Although LG & E, CRI and Coal Equity attempted to negotiate an agreement by which an alternative supplier would replace CRI as the source of coal for LG & E under the LG & E Agreement, such agreement was never fully executed.

The Committee's complaint against Coal

---

1. CRI is a wholly owned subsidiary of Centennial Coal, Inc., a Delaware holding company.

(Am.Compl.(Doc.# 34) ¶ 4.)

Equity, pursuant to 11 U.S.C. § 542[2], seeks to recover $236,812.14, plus interest, allegedly due in connection with the Unpaid Invoices. Coal Equity answers that: (1) no sums were owed to CRI by virtue of certain pre-petition offsets arising out of CRI's alleged breach of the contract; and (2) any and all sums sought to be recovered in the Complaint are actually owed by, and in the possession of, LG & E. Coal Equity's answer includes a demand for a jury trial. Coal Equity also filed two motions (Docs.# 12, 13) seeking, respectively: (1) a determination that this proceeding is non-core; and (2) to withdraw the reference of the proceeding to this Court ("Reference Motion"). While the first motion was granted by Order (Doc. # 30) of this Court on March 22, 2002, the Reference Motion remains pending before the District Court.

On or about April 20, 2002, Plaintiff filed an amended complaint ("Amended Complaint") (Doc. # 34) joining LG & E as a Defendant and asserting claims against both Defendants for breach of contract, turnover of amounts due in respect to the Unpaid Invoices, and unjust enrichment/quantum meruit. (Am.

Compl.(Doc.# 34) ¶¶ 36–60.) Plaintiff's breach of contract claim against LG & E is found on Plaintiff's allegations that CRI was an intended third party beneficiary of the LG & E Agreement of which LG & E's failure to pay for coal received from CRI constituted a material breach that resulted in damages to CRI. (Am.Compl.(Doc.# 34) ¶¶ 47–53.) Thereafter, Coal Equity filed its answer, along with a cross claim and third party complaint (collectively "Cross Claim") (Doc. # 37) against LG & E on grounds of indemnity and/or contribution. On May 20, 2002, LG & E moved to dismiss the Amended Complaint and Cross Claim on the ground that such claims are barred by the applicable four-year statute of limitations.[3] Subsequently, on June 25, 2002, LG & E filed the instant motion (Doc. # 56), pursuant to 28 U.S.C. § 1412[4], seeking to transfer venue to the United States District Court for the Western District of Kentucky (Louisville Division).[5]

### DISCUSSION

28 U.S.C. § 1412 permits a court to transfer venue of a proceeding such as this one "in the interest of justice or for

---

**2.** 11 U.S.C. § 542 provides in pertinent part:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

**3.** Such motion is fully briefed and is currently pending before the Court.

**4.** Section 1412 provides:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

**5.** Previously, on April 29, 2002, Coal Equity filed a similar motion (Doc. # 38) seeking entry of an order abstaining pursuant to 28 U.S.C. § 1334, or, in the alternative, transferring venue of this action to the Western District of Kentucky. That motion has been fully briefed and is pending before the Court. While Plaintiff objects to the instant motion to transfer venue, Coal Equity does not. (See Letter filed by Coal Equity on July 9, 2002 (Doc. # 59).)

the convenience of the parties." 28 U.S.C. § 1412.[6] Although the moving party bears the burden of demonstrating by a preponderance of the evidence that a transfer is appropriate, the ultimate decision to transfer venue lies within the sound discretion of the Court. *Larami Ltd. v. Yes! Entm't Corp.*, 244 B.R. 56, 61 (D.N.J.2000). A determination of whether to transfer venue under § 1412 turns on the same issues as a determination under § 1404(a) which permits a court to transfer a *civil action* "[f]or the convenience of the parties and the witnesses [or] in the interest of justice," 28 U.S.C. § 1404(a). *See Larami*, 244 B.R. at 61, n. 7; *Internal Revenue Serv. v. CM Holdings, Inc.*, No. CIV.A.97-695, 1999 WL 459754, at *2 (D.Del. Jun.10, 1999). Although the statutes set forth only three factors for the court's consideration in ruling upon a motion to transfer venue pursuant to §§ 1404(a) and/or 1412—convenience of the parties, convenience of the witnesses and the interest of justice the Third Circuit has outlined several additional factors to be considered: (1) plaintiff's choice of forum, (2) defendant's forum preference (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the

convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)[7]; *Larami*, 244 B.R. at 61; *CM Holdings*, 1999 WL 459754, at *2.[8] Here, I find that these factors weigh in favor of transferring venue to the United States District Court for the Western District of Kentucky (Louisville Division).

▮ Plaintiff argues that the first factor— Plaintiff's choice of forum— should be given significant weight because transferring venue would delay the administration of Debtors' Estate and the adjudication of this proceeding, and increase the costs of litigation for Plaintiff. (Pl.'s Mem. (Doc. # 58) at 10–12.) While I recognize that Plaintiff's choice of venue is to be given significant weight in any decision to transfer venue, that weight is diminished when, as here, Plaintiff's choice has no

---

**6.** 28 U.S.C. §§ 101 *et seq.* is hereinafter referred to as "§ ___".

**7.** Although the Court's decision in *Jumara* related to a transfer request made under § 1404(a), as discussed above, courts have applied the same analysis to transfer requests brought pursuant to § 1412. *See, e.g., Larami*, 244 B.R. at 61, n. 7

**8.** The parties set forth a list of 9 factors, as enumerated in *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 406 (Bankr.E.D.Pa.2002), for the Court's consideration: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance

of unwilling witnesses and the cost of obtaining those witnesses' attendance; (3) enforceability of a judgment if one is obtained; (4) relative advantages and obstacles to a fair trial; (5) local interest in having local controversies decided at home; (6) trial in state the law of which will govern the action; (7) the proximity of the debtor and creditors of every kind to the court; (8) the location of the assets; and (9)the economic administration of the estate and the economic necessity for ancillary administration if liquidation should result. (LG & E Br. (Doc. # 57) at 5–6; Pl.'s Mem. (Doc. # 58) at 5.) I find each of these factors to be encompassed in the more inclusive list provided above.

direct relation to the operative, underlying facts of the proceeding which itself has no bearing on a reorganization effort. Debtors' Plan— a liquidating plan— has been substantially consummated. Therefore, it is difficult to see how transfer of this proceeding would, as Plaintiff contends, delay the administration of Debtors' Estate. This is particularly true in light of the fact that the instant proceeding is not closely tied to Debtors' bankruptcy, but merely constitutes an attempt by Plaintiff to liquidate an account receivable resulting from Debtors' business operations in Kentucky. As such, I find that both the outcome and the transfer of this proceeding will have little if any impact on the administration of Debtors' bankruptcy case and/or the Estate.[9]

Similarly, I also find that transferring venue to the Western District of Kentucky will not delay the adjudication of this proceeding and/or significantly increase the costs of litigation for Plaintiff. Despite the fact that this proceeding has been pending in Delaware for approximately twenty-one months, it has not progressed past the preliminary pleading stage. LG & E's motion to dismiss and Coal Equity's motions to abstain and to withdraw the reference remain pending. The only determinations that this Court has made with respect to the instant matter are a determination that this matter is non-core, and a determination that Plaintiff was permitted to amend the Complaint to include LG & E as a Defendant. Thus, despite Plaintiff's contentions to the contrary, this Court has little or no familiarity with the specific facts giving rise to the instant dispute. As discussed above, this matter is not intricately related to Debtors' bankruptcy cases, but rather, constitutes an independent contract dispute that is governed by Kentucky state law. Therefore, while the Court has become familiar with the facts of this proceeding to the extent necessary to enter a determination that it constitutes a non-core matter and to rule on the instant motion to transfer, the Court is not familiar with the facts underlying this proceeding such that it would enable the proceeding to be more quickly adjudicated in this Court than another. This is particularly true in light of the current burden on this Court's docket, the likely possibility that Coal Equity's pending Reference Motion will be granted, and the fact that Coal Equity has demanded a jury trial. If the Delaware District Court grants Coal Equity's Reference Motion, this entire matter will be withdrawn to the District Court of Delaware which has no greater familiarity with the facts of this proceeding than the Western District of Kentucky. By exercising its right to demand a jury trial in this matter, Coal equity effectively removed this proceeding from the jurisdiction of this Court. As a result, a new judge and jury will have to familiarize themselves with the facts of this proceeding, whether here or in Kentucky. In light of the foregoing, I am not convinced that transferring this proceeding to the Western District of Kentucky will delay the adjudication thereof, thereby increasing Plaintiff's litigation costs.

---

9. In support of her argument to the contrary, Plaintiff refers to Defendants' alleged refusal to settle this dispute, arguing that as long as this proceeding remains active, Plaintiff will continue to incur costs of administration. (Pl.'s Mem. (Doc. # 58) at 12.) I find this argument to be unpersuasive. Defendants' alleged refusal to settle has no relation to the venue in which this proceeding is litigated. Plaintiff does not contend, and offers no evidence demonstrating, that Defendants would be more willing to settle if this proceeding remains in Delaware than they would if the proceeding is transferred to Kentucky. Absent evidence to that effect, Plaintiff's argument is irrelevant.

■ In addition, I am also not convinced that by Plaintiff's additional argument that transferring this proceeding to Kentucky will significantly increase Plaintiff's litigation costs due to the fact that she will have to retain local counsel in Kentucky and therefore, either incur the expense of duplicate counsel, or lose the benefit of her Delaware counsel's familiarity with this matter. (*See* Pl.'s Mem. (Doc. # 58) at 10–11.) Aside from the fact that the convenience of counsel is generally not relevant to the determination of whether to transfer venue of a proceeding pursuant to § 1412, I find that the cost and delay Plaintiff will incur as a result of the transfer will be insignificant in light of the facts that this proceeding remains in the preliminary pleading stage, and Plaintiff has already obtained Kentucky counsel in connection with the instant motion to transfer. Although Plaintiff disagrees and argues that she will incur considerable expense and delay while counsel in Kentucky gets "up to speed" on the matter, I find any anticipated "expense and delay" to be insignificant in comparison to the expense and delay that will result if this proceeding is not transferred. *See* discussion, *infra*. As such, I find that Plaintiff's choice of forum does not weigh heavily in favor of keeping the instant proceeding in Delaware.

Conversely, given that Defendants' choice of venue is also that in which all claims in the underlying action arose, most of the parties and witnesses reside[10], and is the principal place of business of both CRI and LG & E, I find that the second, third, fifth and sixth factors all weigh in favor of transferring venue of this proceeding to Kentucky.[11] Each of the Agreements giving rise to the underlying dispute were negotiated and entered into in Kentucky. (LG & E Br. (Doc. # 57) at 7.) In addition, the coal shipped by CRI to LG & E pursuant to the terms of the Agreements was shipped from CRI's Kentucky mining operation to LG & E's facilities in Kentucky. (*Id.*) Furthermore, the post-April 1997 negotiations entered into by the parties to attempt to replace CRI as the source of coal for LG & E under the LG & E Agreement with an alternative supplier also took place in Kentucky. (*Id.*) Therefore, not only did each of the events giving rise to the claims and defenses in this action take place in Kentucky, but also, the outcome of this proceeding will likely turn on evidence that will be more easily obtained and/or produced in Kentucky. *See* Fed.R.Bankr.P. 9016 (applying Fed. R.Civ.P. 45(b)(2) which limits the court's effective service of subpoena to a 100 mile radius).

Although Plaintiff supports her contention to the contrary by arguing that: (1) LG & E has not identified any third party witnesses, (2) the whereabouts of the witnesses identified by Coal Equity are unknown, and (3) this proceeding is likely to turn "to a large extent on documentary evidence rather than testimony" (Pl.'s Mem. (Doc. # 58) at 13–14), I find these

---

10. Plaintiff, herself, is a Kentucky resident. (Pl.'s Mem. (Doc. # 58) at 3.)

11. With respect to the fourth factor, LG & E contends that "[v]irtually all documents" are located in Kentucky. (LG & E Br. (Doc. # 57) at 7.) Conversely, Plaintiff asserts that "all of Debtors' documents related to this case are in Delaware," "[c]opies of Coal Equity's documents are also in Delaware," and "[i]n any event, transporting documents is easy and inexpensive." (Pl.'s Mem. (Doc. # 58) at 14.) In light of this dispute, and the fact that copies of any books and/or records pertinent to the instant dispute are likely to be located both in Delaware and Kentucky or could easily and inexpensively be transferred to the proper venue, I find the fourth factor to be neutral in the determination before me.

arguments to be unpersuasive.[12] First, the fact that LG & E was not added as a Defendant in this proceeding until April 18, 2002 and has not yet filed an answer to the Amended Complaint due to its pending motion to dismiss (Doc. # 49) lends little credibility to Plaintiff's argument that LG & E has yet to identify any witnesses. In addition, even if, as Plaintiff argues, the whereabouts of the witnesses identified by Coal Equity are unknown, the fact that such witnesses are all either current or former employees of one of the parties suggests that Kentucky will be the more convenient forum since CRI's and LG & E's principal places of business are located in Kentucky, and the subject matter of this dispute relates to both Debtors' coal facilities in Kentucky and Agreements negotiated and executed in Kentucky. Although Coal Equity's principal place of business is in Ohio, Coal Equity has itself moved to transfer venue of this proceeding to the Western District of Kentucky. (*See* Coal Equity Mot. (Doc. # 38).) In so doing, Coal Equity has argued that "substantially all of the material witnesses pertinent to the resolution of this matter, including Debtors' agents and employees, are located within an approximate 120 mile radius of Louisville, Kentucky," noting that: (1) "120 miles is figured as the approximate driving distance to U.S. District Court in Louisville, Kentucky from both Owensboro, Kentucky (the Debtor's principal office identified by Plaintiff in her Memorandum) and Mason, Ohio (Coal Equity's principal office)"; and (2) "[c]onsidering that LG & E is head-quartered in Louisville, its witnesses would be required to travel a mere six blocks should venue be transferred" there. (Coal Equity Reply (Doc. # 47) at 8, n. 3.) These contentions further undermine Plaintiff's argument that the factors pertaining to location of evidence and convenience of the witnesses do not weigh in favor transfer. Furthermore, Plaintiff's additional argument that this proceeding is likely to turn to a large extent on documentary evidence rather than testimony is speculative. The fact that Plaintiff's allegations include LG & E's failure, despite extensive negotiations, to agree to an acceptable replacement for CRI under the LG & E Agreement indicates that testimony will likely be necessary as such negotiations were presumably never reduced to a written agreement. In light of the fact that these negotiations took place in Kentucky, I find it likely that the most of the witnesses with information relevant to the negotiations reside closer to Kentucky than to Delaware, thereby making Kentucky a more convenient forum. (*See id.*)[13] Finally, to the extent the parties' claims and/or defenses may turn on whether certain coal shipments from CRI to LG & E conformed with the specifications set forth in the LG & E Agreement, expert testimony may be required. Given that the coal originated from CRI's mining operation in Kentucky, an examination of that operation may be necessary. To the extent witnesses are called to testify to the results of any such examinations, it will certainly be more convenient for the witnesses if the action is transferred to

---

**12.** Indeed, in her memorandum (Doc. # 58) in opposition to LG & E's motion, Plaintiff admits that the factors pertaining to access to sources of proof and witnesses "weigh marginally in favor of Kentucky". (*Id.* at 6.)

**13.** Plaintiff contends that its own witnesses may hail from different states, including Pennsylvania, Kentucky, Texas, Tennessee, and New York. (Pl.'s Mem. (Doc. # 58) at 14.) With the exception of the potential witness from Kentucky, for whom Kentucky will undoubtedly be the more convenient forum, it appears that the convenience of the witnesses will be the same whether they are required to travel to Delaware or Kentucky.

Kentucky where the mining operation is located.

Although Plaintiff also argues that the location of Debtors' creditors weighs against transfer because "all of the Debtors' major creditors and interest holders... are located in New York" (Pl.'s Mem. (Doc. # 58) at 6), I find this argument to be without merit. As discussed above, the instant dispute constitutes nothing more than a contract dispute between CRI, Coal Equity and LG & E which will not significantly impact Debtors' Estate. Therefore, I find the location of Debtors' creditors, who are neither parties to this adversary proceeding, nor likely to be affected by the outcome thereof, to be irrelevant. In contrast, the location of CRI, Coal Equity and LG & E is not only relevant to the instant determination, but indicates that fifth factor— the convenience of the parties— weighs in favor of transferring venue to the Western District of Kentucky. In light of the proximity of the parties to, and the ease of accessibility to the witnesses and documents in Kentucky, I find that it would be significantly burdensome and expensive for Defendants to litigate in Delaware. This is particularly true in light of the fact that Defendants probably had little or no expectation that litigation arising out of the Agreements would be commenced in Delaware. Although CRI is a Delaware corporation, its principal place of business is in Kentucky and, as discussed above, most if not all of the transactions giving rise to the instant action took place pre-petition in Kentucky. Given that prior to the Petition Date, CRI conducted a mining operation and executed the Agreements in furtherance of such business in Kentucky, CRI knew and/or should have known that it was subject to the jurisdiction of the Kentucky courts, particularly with regard to any disputes arising in connection with its Kentucky mining operation and/or the Agreements.

Furthermore, each of the remaining factors to be analyzed in deciding whether to transfer venue weigh in favor of doing so.[14] Plaintiff acknowledges that the instant dispute is governed by Kentucky law. In addition, the threshold issue, arising out of LG & E's pending motion to dismiss, as to which statute of limitations applies to Plaintiff's and Coal Equity's claims against LG & E is an issue of Kentucky law. Therefore, although Plaintiff claims that none of the issues involved are novel or complex, I think it would be more appropriate for a local judge to decide the matter. A federal judge sitting in Kentucky is more likely to be familiar with the applicable state law issues than this Court and has a greater interest in deciding issues which may affect Kentucky residents and/or the development of Kentucky common law. As such, not only do I find it likely that the matter will proceed more easily, efficiently and expeditiously in Kentucky, but also, a Kentucky court has a greater interest in deciding the matter. In light of these facts, and given the current burden on this Court's docket, I find that LG & E has met its burden of showing that the convenience of the parties and the interests of justice warrant transfer of this proceeding to the United States District Court for the Western District of Kentucky (Louisville Division).

## CONCLUSION

For the reasons stated above, LG & E's motion (Doc. # 56) to transfer venue of this proceeding to the United States District Court for the Western District of Kentucky (Louisville Division) is granted.

---

14. The seventh factor— enforceability of judgment— is neutral.