ARGOS, Plaintiff,

v.

ORTHOTEC LLC, Defendant.

No. CIV.03–0757–SLR.

United States District Court,
D. Delaware.

Jan. 8, 2004.

Srinivas M. Raju, Esquire and Lisa M. Zwally, Esquire, Richards, Layton & Finger, Wilmington, DE, for Plaintiff. Of Counsel: Jess M. Collen, Esquire and James R. Hastings, Esquire, Collen IP, Ossining, NY.

David L. Finger, Esquire, Wilmington, DE, for Defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

■ On July 25, 2003, Association europénee des groupes d'études pour l'ostéosynthése rachidienne ("ARGOS") filed a complaint against Orthotec, LLC alleging cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1125(d), based upon Orthotec's registration and use of the domain name argos-us.com.[1] (D.I.1) ARGOS is a corporation organized under the law of France. (*Id.* at ¶ 1) It is a non-profit membership organization that functions to promote and facilitate applied research in spinal surgery. (*Id.* at ¶ 6) Orthotec is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Beverly Hills, California. (*Id.* at ¶ 2) It markets and sells spinal surgery products to the medical community at large. (*Id.* at ¶ 13) The court has original jurisdiction over the instant suit pursuant to 28 U.S.C. §§ 1121, 1331, 1337, and 1338(a). Presently before the court is Orthotec's motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and 28 U.S.C. § 1404(a) to dismiss the complaint for lack of standing, dismiss the complaint for failure to state a claim, transfer the action to the United States District Court for the Central District of California, or stay. (D.I.5) For the reasons that follow, the court denies Orthotec's motion to dismiss on standing grounds, denies its motion to dismiss for failure to state a claim, denies its motion to transfer, and denies its motion to stay.

## II. BACKGROUND

Dr. Patrick Bertranou is the managing member and eighty-six percent shareholder of Orthotec. (D.I. 6, tab 1) He was formerly a member of ARGOS. (*Id.*) On June 28, 1999, Orthotec registered the domain name argos-us.com with Network Solutions, Inc.. (*See* D.I. 6, ex. A) Thereafter, on August 24, 2002, Orthotec filed an application with the U.S. Patent and Trademark Office ("PTO") for the "ARGOS" trademark. (*See id.,* ex. C) Orthotec operated a website at *www.argos-us. com* at some point in time. (D.I. 6, tab 1 at ¶ 2) Currently, however, this website is not active. (*Id.*)

ARGOS opposed Orthotec's trademark application on October 17, 2003 (D.I. 6, ex. F at ¶ 1) and subsequently filed its own applications for registration of the "ARGOS" trademark with the PTO on December 18, 2002 and February 24, 2003. (*See id.,* ex. D, E) ARGOS purports to have used the name "ARGOS" since as early as 1996. (*Id.* at ¶ 9) It also owns the domain name *argoseurope.com* and currently operates the *www.argos-europe.com* website to render information about spinal surgery to the medical community. (*Id.* at ¶ 11)

On January 20, 2003, Orthotec filed suit against Eurosurgical, S.A., in the Superior Court of the State of California for the County of Los Angeles ("the California Action"). (*See* D.I. 6, ex. B) According to the complaint, Orthotec and Eurosurgical were formerly in a business relationship. (*Id.*) Orthotec alleges that Eurosurgical wrongfully terminated this relationship. (*Id.*)

On July 3, 2003, Orthotec filed a motion to suspend its trademark application with the PTO pending the outcome of the California Action on the ground that ARGOS and Eurosurgical were related entities and that resolution of Orthotec's rights in the California Action would help resolve the dispute over the "ARGOS" trademark be-

---

1. ARGOS seeks to permanently enjoin Orthotec from using the ARGOS trademark or domain name argos-us.com or any other trademark or domain name confusingly or deceptively similar to or colorably imitative of the ARGOS trademark. (D.I. 1 at ¶ 22a)

tween Orthotec and ARGOS. (D.I.6, ex. F) ARGOS filed a motion to oppose suspending Orthotec's trademark application. (*See* D.I. 6, ex. G) On July 29, 2003, the PTO granted Orthotec's motion. (*See* D.I. 6, ex. H) Nevertheless, on August 26, 2003, the PTO vacated its July 29, 2003 order on the grounds that the parties to the opposition proceeding are different from those named in the California Action and also that the marks and issues in each proceeding are different. (*See* D.I. 7, exh. A at 3) The PTO reinstated its original order instituting the opposition proceeding.

## III. DISCUSSION

### 1. Motion to Dismiss For Lack of Standing

■ Orthotec contends that the court does not have subject matter jurisdiction over the dispute at bar because ARGOS lacks standing to assert its claims. Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1) (2003). There are two types of Rule 12(b)(1) motions. The first type, a facial attack, challenges only the court's subject matter jurisdiction. The second type, a factual attack, allows the court to question the plaintiff's facts after the defendant files an answer. *Lexington Ins. Co. v. Forrest*, 263 F.Supp.2d 986, 996 (E.D.Pa.2003)(citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). Where the defendants have not filed an answer to the complaint as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack. Under such an attack, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* (citations omitted). Dismissal for a facial challenge is "proper only when the claim 'clearly appears to be im-

material and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.' " *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–1409 (3d Cir.1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

Standing has been defined by the United States Supreme Court as "whether the litigant is entitled to have the court decide the merits of a dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Id.* In fact, federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Standing cannot be "inferred argumentatively from averments in the pleadings," *Grace v. American Cent. Ins. Co.*, 109 U.S. 278, 284, 3 S.Ct. 207, 27 L.Ed. 932 (1883), but rather "must affirmatively appear in the record." *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Additionally, the party who seeks the exercise of jurisdiction in its favor has the burden of clearly alleging facts demonstrating that it is a proper party to invoke judicial resolution of the dispute. *Id.*

The Supreme Court has announced three requirements for standing which originate out of Article III of the Constitution, all of which must be satisfied for a federal court to entertain a claim. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted), the Supreme Court opined:

Over the years, our cases have established that the irreducible constitutional

minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not .... the result of the independent action [of] some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Therefore, to satisfy the constitutional standing requirements, a plaintiff must show that it has (1) suffered or will imminently suffer an injury, which is (2) fairly traceable to the defendant's conduct and which is (3) likely to be redressed by a favorable federal ruling on the matter. On this first point, a plaintiff must show that this injury is "actual or imminent, not conjectural or hypothetical." *Id.* In addition, a plaintiff who seeks injunctive relief must show that the defendant's conduct will likely cause injury in the future. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

In addition to the constitutional standing requirements, the federal courts have, on their own accord, adopted a set of self-imposed prudential standing limitations on the exercise of federal jurisdiction. *See* Chemerinsky, Federal Jurisdiction § 2.3 at 57, 97–101. "These considerations require that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based." *Davis by Davis v. Philadelphia Housing Auth.,* 121 F.3d 92, 96 (3d Cir.1997) (citations omitted). These "prudential" limitations are generally designed to prevent courts from deciding broad questions of social import where no individual rights would be vindicated. *Id.*

Orthotec contends that ARGOS cannot establish facts sufficient to show standing because it cannot show that it owns a valid common law trademark entitled to protection under 15 U.S.C. § 1125(d). Specifically, Orthotec argues that ARGOS cannot show that it used the ARGOS trademark in continuous and substantial commerce in the United States prior to 1999 when Orthotec registered the domain name argos-us.com. Orthotec asserts that ARGOS's complaint merely alleges that the ARGOS trademark "has been advertised, promoted and otherwise used in commerce throughout the world, including the United States, and this District, since at least as early as 1996," but that advertising and promotion do not constitute "use in commerce" as recognized by the Lanham Act.

Accepting all allegations of the complaint as true and drawing all reasonable inferences in favor of ARGOS, the court disagrees with Orthotec's argument and believes that ARGOS has standing to assert its anticybersquatting claim. Section 1127 of the Lanham Act provides a specific definition for the term "use in commerce" as it relates to servicemarks.

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be used in commerce ... (2) on service when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than

one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (2003). The Supreme Court has recognized that "there is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed.... The right to a particular mark grows out of its use, not its mere adoption." *United Drug Co. v. Theodore Rectanus, Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918). The Supreme Court has also acknowledged that it is well settled that the scope of "in commerce" as a jurisdictional predicate of the Lanham Act is broad and has a sweeping reach. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S.Ct. 252, 97 L.Ed. 319 (1952).

With particular regard to the internet, the Southern District of New York has ruled that using a domain name to operate a website is "use in commerce" because it affects a party's ability to offer services. *Planned Parenthood Fed'n of America, Inc. v. Bucci*, 1997 WL 133313, *3, 1997 U.S. Dist. LEXIS 3338, *10 (S.D.N.Y. 1997). The Southern District of New York stated that "[t]he nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement." *Id.* (citing *Intermatic v. Toeppen*, 947 F.Supp. 1227, 1239 (N.D.Ill.1996)).

Applying the *Planned Parenthood* decision to the facts at bar, the court finds that ARGOS satisfies the "use in commerce" requirement because it operates the website *www.argos-europe.com* to provide information about spinal surgery to persons throughout the world. In turn, the court also concludes that ARGOS satisfies the three constitutional standing requirements. ARGOS has suffered and will continue to suffer injury traceable to Orthotec's use and operation of a website having a confusingly similar domain name to its argos-europe.com domain name and that such injury may be redressed by enjoining Orthotec from continuing to use the domain name argos-us.com and ARGOS mark.[2] Additionally, the court believes that prudential standing limitations, although not discussed by either party in their briefing documents, likewise favor subject matter jurisdiction. That is, ARGOS is attempting to assert its own interests in the use of the ARGOS name as protected by 15 U.S.C. § 1125(d) in bringing the instant suit against Orthotec. Accordingly, the court denies Orthotec's motion to dismiss on Rule 12(b)(1) grounds.

### 2. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6) (2003). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). In analyzing a motion to dismiss under this rule, the court, therefore, must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). The court, however, is not required to credit "bald assertions" or "legal

---

**2.** The court is particularly struck by the fact that Dr. Bertranou participated in the ARGOS organization and then later formed Orthotec as an eighty-six percent shareholder. Given his involvement in the ARGOS organization, Dr. Bertranou was likely aware of the *www.argos-europe.com* website when Orthotec opted to file a domain name on argos-us.com.

conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The defendant has the burden of persuasion to show that no claim has been stated. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

Orthotec contends that ARGOS has failed to state a claim under 35 U.S.C. § 1125(d) upon which relief may be granted because ARGOS did not allege facts permitting an inference of bad faith intent to profit from the ARGOS trademark.[3] The court disagrees with Orthotec and finds that ARGOS adequately alleged the second element requisite to a cybersquat-

ting claim in its complaint. Orthotec merely argued that ARGOS fails to state a claim because the complaint contains no suggestion that Orthotec offered or intended to sell the domain name to ARGOS or any other third party. The court notes that this argument improperly limits the element of "bad faith intent to profit from the mark" to a literal interpretation of the statutory words alone. The court finds that the drafters of the Lanham Act did not intend to so narrowly limit this element. Rather, the drafters included a non-exhaustive list of statutory factors[4] for a court to consider in determining whether a defendant exhibits a bad faith intent.[5] Tapping into these considerations, particularly the fifth and eighth factors, the court notes that ARGOS's complaint alleges that Orthotec attempted to trade upon the goodwill that ARGOS established and to generate confusion among the rele-

**3.** To establish a claim of cybersquatting, a plaintiff must show: (1) that a defendant registered, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive or famous trademark and (2) that the defendant has a bad faith intent to profit from that mark. *See* 15 U.S.C. § 1125(1)(A) (2003).

**4.** Under 15 U.S.C. § 1125(d)(1)(B), a court may consider the following factors in determining whether a person has a bad faith intent: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source,

sponsorship, affiliation, or endorsement of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning the Lanham Act.

**5.** The court recognizes that the sixth factor embodies the heart of Orthotec's argument.

vant medical community as to the affiliation and sponsorship of Orthotec's activities. (*See* D.I. 1 at ¶ 22) Accepting this allegation as true and drawing all reasonable inferences therefrom in favor of ARGOS, the court concludes that ARGOS'c complaint is sufficient to survive Orthotec's motion to dismiss for failure to state a claim. The court, therefore, denies Orthotec's motion to dismiss on Rule 16(b)(6) grounds.

### 3. Motion to Transfer Venue

■ Orthotec moves the court to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). Because courts accord a plaintiff's choice of forum substantial weight and only transfer venue if the defendant truly is regional (as opposed to national) in character, a defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" the defendant. *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)). To this end, "[d]efendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D.Del.1993). Motions to transfer venue are also granted if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties. *American Bio Medica Corp., v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175, *5,

1999 U.S. Dist. LEXIS 12455, *18 (D.Del. 1999).

In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in § 1404(a) (i.e., convenience of parties, convenience of witnesses, or interests of justice). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). The Third Circuit, in fact, provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

Under the facts at bar, the court finds that relevant private and public factors

balance in favor of maintaining the instant suit in the District of Delaware. The court adheres to the notion that transfer is not to be liberally granted and the plaintiff's choice of forum is a paramount consideration. ARGOS filed suit against Orthotec in the District of Delaware because Orthotec is a Delaware limited liability company. Given Orthotec's choice for incorporation, the court finds that it voluntarily exposed itself to the possibility of litigation in Delaware. Orthotec cannot now attempt to shield itself from litigation in this forum by arguing that no conduct occurred in Delaware, that no injury was felt in Delaware, and that deposition and trial in Delaware would involve additional expense. As well, the court is not persuaded that venue is more appropriate in California and believes that Orthotec is very likely motivated to transfer venue to the Central District of California because it is presently involved in the California Action there.[6] In contrast, the court finds that the District of Delaware is an appropriate forum to resolve the instant one-count cybersquatting complaint. The court agrees with ARGOS that discovery easily may be facilitated given current means for electronic data storage and the use of overnight courier services. Moreover, the court notes that Orthotec has not averred in its briefing documents that witnesses would be unavailable for trial in Delaware. The court, therefore, denies Orthotec's motion to transfer venue.

### 4. Motion to Stay

■ Orthotec moves the court to stay this proceeding pending the PTO's resolution of the parties' rights in the United States to the trademark "ARGOS." The

Supreme Court has recognized that courts have inherent power to manage their dockets and stay proceedings. *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Similarly, the Third Circuit has acknowledged that the decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir.1985). In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted).

After reviewing these factors as they apply to the facts at bar, the court declines to issue a stay in favor of Orthotec. The court finds that a stay would present a distinct disadvantage to ARGOS and merely delay ARGOS's right to adjudicate its case against Orthotec. ARGOS has the option to bring a cybersquatting claim against Orthotec regardless of whether the PTO rules in its favor regarding registration of the ARGOS trademark in the United States. The opposition proceeding before the PTO, therefore, is unrelated to the instant suit. Accordingly, the court denies Orthotec's motion to stay discovery.

### IV. CONCLUSION

For the reasons stated, Orthotec's motion to dismiss on standing grounds is denied, its motion to dismiss for failure to

---

**6.** The California Action is between Orthotec and Eurosurgical, S.A.. The court, consequently, fails to see how the instant plaintiff ARGOS is in any way connected to this California Action. Orthotec merely stated in its briefing documents that Eurosurgical, S.A. is

affiliated with ARGOS, but failed to provide any support for this averment. Moreover, when deciding the parties' motion to stay the opposition proceeding, the PTO likewise noted that the instant parties were not both involved in the California Action.

state a claim is denied, its motion to transfer is denied, and its motion to stay is denied. An order shall issue.

**ORDER**

At Wilmington this 8th day of January, 2004

IT IS ORDERED that Orthotec's motion to dismiss, transfer, or stay (D.I.5) is denied.