**Harry TSOUKANELIS and Toni Tsoukanelis, Plaintiffs,**

**v.**

**COUNTRY PURE FOODS, INC., Defendant.**

**No. CIV. 04–128–SLR.**

United States District Court, D. Delaware.

Sept. 14, 2004.

---

Martin J. Weis, Esquire of Dilworth Paxson, Wilmington, DE, and Thomas S. Biemer, Esquire and Darryl W. Shorter, Esquire of Dilworth Paxson, Philadelphia, PA, Counsel for plaintiffs.

Elizabeth M. McGeever, Esquire of Prickett, Jones & Elliot, P.A., Wilmington, DE, Counsel for defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

Plaintiffs, Harry Tsoukanelis and Toni Tsoukanelis, filed this suit on March 1, 2004, alleging that defendant, Country Pure Foods, defaulted on a Subordinated Note ("Third Note"). (D.I. 1 at 3) Defendant is a Delaware corporation, with its principal place of business in Ohio. (*Id.* at 1) Plaintiffs are residents of Connecticut. (*Id.*) This court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $100,000. Currently before the court are defendant's motion to transfer venue, plaintiffs' motion for summary judgment, and defendant's cross mo-

tion for summary judgment. For the reasons stated below, the defendant's motion to transfer venue is denied and the plaintiffs' motion for summary judgment is granted.

## II. BACKGROUND

On June 20, 1995, plaintiffs sold their ownership in an independent juice processing company to defendant for cash and a note in the amount of $1,755,115. (D.I. 1 at 2) The note was due June 20, 2004, along with interest of nine percent (9%) per annum. (*Id.*) From June 1995 to June 30, 1998, the note allowed defendant to pay the plaintiffs interest in the form of "paid-in-kind" payments, or additional notes to cover the interest payments. (D.I. 14 at Ex. A) On December 31, 1996, the plaintiffs and defendant executed a new note ("Second Note") to lower the interest rate on the original note to 7.3%. (D.I. 1 at Ex. 1) The Second Note allowed payments to be paid-in-kind until June 30, 2000. (D.I. 1 at Ex. 1)

On March 31, 2001, the plaintiffs again lowered the interest rate from 7.3% to 6%. (D.I. 41 at Ex. B) The interest payments on this note, the Third Note, were to be paid quarterly with two percent (2%) to be paid in cash and the rest could be paid-in-kind. The Third Note also limited plaintiffs' ability to declare default or accelerate collection of the note upon defendant's default on senior debt. (*Id.*) Specifically, § 6(a)(iii) states:

> If an event of default occurs under the Senior Debt and the Senior Debtholders give to the Corporation and the holder of this Note a written notice requesting that no payment or distribution be made on or with respect to this Note, thereafter, unless such event of default shall have been cured or waived or shall have ceased to exist or unless the Senior Debt shall have been paid in full or otherwise discharged, the **Corporation shall refrain from making any payments of interest on or principal of this Note, and the holder of this Note shall refrain from accelerating payment of this Note and commencing any proceedings to collect on this Note until the earliest to occur of (A) the expiration of 270 days** after delivery of the notice referred to in this Section 6(a)(iii) and (B) the commencement of any of [bankruptcy or insolvency proceedings].

(*Id.*) (emphasis added)

On May 29, 2003, plaintiffs received a notice of default from Madison Capital Funding, LLC ("Madison"), a senior debt holder, informing them that defendant had defaulted on its loan. (*Id.* at Ex. 3) Pursuant to Section 6(a)(iii) of the note, Madison requested that no payment, distribution or acceleration be made on the Third Note until commencement of insolvency or bankruptcy proceedings or the expiration of 270 days. (*Id.* at Ex. 3) At that time, defendant had failed to meet Madison's requirements for the fiscal quarter ending March 31, 2003, and failed to make loan amortization payments that were due on May 1, 2003. (D.I. 35 at 3)

Defendant did not make the June 30, 2003, interest payment on the Third Note, and has made no subsequent interest payments. (D.I. 41 at 3) On February 17, 2004, plaintiffs sent a letter to defendant notifying it of default and their intent to declare the Third Note due and payable "as soon as possible under the Note." (D.I. 1 at Ex. 4) The 270 day stand still period did not expire until February 23, 2004. On that same day, defendant sent plaintiffs notice that the demand was premature because it was before the expiration of 270 days. (D.I. 35 at Ex. A) Defendant asserted it was not in default on the Third Note because Section 6 prevented it from making interest payments to plaintiffs. (*Id.*) Also on February 23, 2004, Madison issued a second notice of default to plaintiffs,

which maintained that they were prohibited from collecting on the Third Note and exercising acceleration rights for another 270 days, until the senior debt was settled, or insolvency or bankruptcy proceedings were instituted. (D.I. 47 at 4). At this point, in addition to the previous defaults on the senior debt, defendant has failed to meet the requirements for the fiscal quarter ending June 30, 2003, failed to make amortization payments on August 1, 2003, failed to repay the "Working Capital Loans" that were due August 15, 2003, and failed to deliver financial statements on a timely basis. (D.I. 35 at 4)

## III. MOTION FOR CHANGE OF VENUE

### A. Standard of Review

■ Defendant moves the court to transfer this matter, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Ohio. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). Because courts accord a plaintiff's choice of forum substantial weight and only transfer venue if the defendant truly is regional (as opposed to national) in character, a defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" the defendant. *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)). To this end, "[d]efendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215 (D.Del.1993).

■ In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in § 1404(a) (i.e., convenience of parties, convenience of witnesses, or interests of justice). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). The Third Circuit, in fact, has provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiffs' forum preference as manifested by the plaintiffs' original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

### B. Discussion

■■ In this case plaintiffs have clearly manifested a preference for Delaware courts, as they filed their claim in this

forum. Because plaintiffs did not bring the action on their "home turf," their choice of forum is accorded less weight than it would had they chosen Connecticut, or a state where the incidents at issue arose. *See TCW/Camil Holding LLC, v. Fox Haron & Camerini LLP*, No. 03–10717, 03–23929, 03–1154, 2004 WL 1043193, at *2 (D.Del. Apr.30, 2004) (citations omitted). Plaintiffs reasonably assert that traveling to Delaware from Connecticut is less burdensome on them than traveling to Ohio; therefore, Delaware is a more convenient forum than Ohio.

On the other hand, defendant is located in Ohio and argues that Ohio is a more convenient forum for it at no extra inconvenience to plaintiffs who have to travel regardless of a venue transfer. Defendant also claims that all relevant documents and witnesses are located in Ohio. This court, however, has denied motions to transfer venue when the movants were unable to identify documents and witnesses that were unavailable for trial. *See, e.g., Argos v. Orthotec LLC*, 304 F.Supp.2d 591 (D.Del.2004). This case will primarily involve executed documents and applicable law. At this point there is no reason to believe that a large number of witnesses will be required. Defendant has not specifically indicated any witnesses who would be unable or unwilling to appear in Delaware, nor any documents that would be too burdensome to ship to Delaware. Therefore, defendant has not shown litigation in Delaware presents an unusual burden.

Defendant voluntarily chose to incorporate in Delaware and avail itself of the laws of this State. As such, defendant cannot now claim that litigation in Delaware is too burdensome and warrants a transfer of venue without putting forth more than the argument that Ohio is a more convenient forum for it. Although the plaintiffs did not choose their "home turf" as the forum, they chose the next closest possible forum. While affording their choice less weight than if they had chosen Connecticut, this court is unwilling to cast aside plaintiffs' choice merely because it is more convenient for the defendant.

There is no evidence that the case should be transferred due to public interests. The agreement, by its own terms, is controlled by the laws of New York. (D.I. 1 at Ex. 1 at 8) There is no reason to find, nor does defendant argue otherwise, that transferring the case to Ohio would make the interpretation and application of New York law any easier. In addition, Delaware has an interest in litigation regarding companies incorporated within its jurisdiction.

## IV. MOTION FOR SUMMARY JUDGMENT

Plaintiffs and defendant have both moved for summary judgment. Plaintiffs argue that the defendant was in default on the Third Note and they were allowed to institute these proceedings. Defendant argues that, pursuant to Section 6, it was not in default during the 270 day stand still period. Defendant also argues plaintiffs are subject to a second 270 day stand still period because they received a second notice of default from Madison.

### A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**B. Discussion**

Resolution of these claims requires interpretation of the agreement in conjunction with an analysis of New York contract law. This court must resolve: (1) whether defendant would be considered in default under the agreement during the first 270 day stand still period; and (2) whether the Third Note allowed for a second default notice from Madison to stay plaintiffs' enforcement of the note for an additional 270 days.

New York law allows for the resolution on summary judgment of contract construction claims so long as the contractual language is not ambiguous. *See Jackson Nat'l Life Ins. Co. v. Ladish Co., Inc.*, 92 Civ. 9358, 1993 WL 43373, at *3 (S.D.N.Y. Feb.18, 1993). Ambiguity arises when the terms of an agreement would create "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997)). Generally, if the court finds a contract term unambiguous, the court can interpret the contract based on the plain and ordinary meaning of the term. In these cases summary judgment would be appropriate. When the court finds a term ambiguous and it must rely on extrinsic evidence, a genuine issue of material fact "necessarily exists." *Id.* Only with regard to unambiguous terms and ambiguous terms with no extrinsic evidence may a court properly grant summary judgment. *Id.*

**1. Consecutive Senior Default Notices**

Section 6(a)(iii) of the Third Note, the subordination clause, contains the only language of record relating to default notices from senior creditors. It explicitly states that, for a 270 day period after notice of an event of default is sent from a senior creditor, plaintiffs cannot commence proceedings to collect on the subordinate note. The Third Note does not define the term

"event of default" with respect to senior debt and does not address the question presented at bar, that is, what is plaintiffs' remedy in the case of a continuing default or consecutive defaults. Indeed, at the close of discovery, the record is silent in this regard.

■ Therefore, the court limits its review to the contract at issue and concludes that § 6(a)(iii) of the Third Note is clear and unambiguous. Once a notice of default is delivered by a senior creditor, defendant is given a 270 day respite from its obligations to plaintiffs. At the expiration of the 270 days, however, plaintiffs have the right to enforce their contract. To interpret the Third Note otherwise would give to the senior creditors unfettered rights to perpetually prevent plaintiffs from collecting the debts due and owing. In the absence of specific language so limiting plaintiffs' contractual rights, the court declines to go beyond the four corners of the Second Note.

### 2. Effect of 270 Day Stand Still on Defendant's Default

The specific language of § 6 prevents defendant from making payments to plaintiffs during the 270 day stand still period. Because the language of the section is directed at defendant, preventing it from making payments, defendant was not defaulting on the Third Note when it failed to make payments during the initial 270 day stand still period. It is undisputed, however, that defendant has failed to make any payments subsequent to the expiration of the first stand still period. Therefore, under the court's interpretation, although defendant was not in default during the initial stand still period, it is now in default.

## V. CONCLUSION

For the reasons discussed above, defendant's motion to transfer venue is denied,

plaintiffs' motion for summary judgment is granted and defendant's motion for summary judgment is denied. The parties are ordered to submit proposed forms for the entry of judgment. An order consistent with this memorandum shall issue.